IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| TYLER J. KOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 10-1072-MO |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

MOSMAN, J.,

    Plaintiff Tyler Kos appeals the Commissioner's decision denying his application for childhood supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I REVERSE and REMAND the Commissioner's decision for further administrative proceedings.

    Mr. Kos was born in March 1992. He filed his application in August 2006, when he was 14 years old. He alleged disability since birth due to attention deficit hyperactivity disorder ("ADHD"),

1 - OPINION AND ORDER

a cognitive disorder, depression, and a language disorder. Admin. R. 19, 146, 155. The ALJ issued his adverse decision in February 2010, when Mr. Kos was almost 18. *Id.* at 13.

The regulations prescribe a three-step sequential evaluation process for determining whether a person under the age of 18 is disabled. 20 C.F.R. §§ 416.924, 416.926a; Social Security Ruling ("SSR") 09-1p, 2009 WL 396031. The administrative law judge ("ALJ") found that Mr. Kos was not engaged in substantial gainful activity and that he had medically determinable impairments which caused more than minimal functional limitations, *viz.* ADHD, a cognitive disorder, an affective disorder, and a language disorder. Admin. R. 19. The ALJ determined that the combination of Mr. Kos's impairments did not meet or medically equal any of the presumptively disabling conditions listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"), and did not satisfy the functional equivalence test of 20 C.F.R. § 416.926a. Admin. R. 20-30. The ALJ concluded that Mr. Kos was not disabled within the meaning of the Social Security Act. *Id.* at 30.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

I.  **Claims of Error**

Mr. Kos contends the ALJ erroneously concluded that his impairments did not meet or medically equal Listing 112.02, which covers organic mental disorders, or Listing 112.04, which covers mood disorders, or both. Mr. Kos also contends the ALJ erroneously determined that he is not disabled under the functional equivalence test of 20 C.F.R. § 416.926a. Mr. Kos contends the ALJ erroneously evaluated his functional limitations because he improperly discounted Mr. Kos's statements, the statements of his mother, and the treating source opinion of Matthew Pearl, L.C.S.W., regarding the limiting effects of his impairments.

II.  **Meeting Listings 112.02 and 112.04**

The Commissioner acknowledges that certain conditions are so severe as to preclude substantial gainful activity. If the medical evidence establishes that a claimant suffers from such a condition, the claimant will be presumed to be disabled without further inquiry. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.924(d)(1). Each presumptively disabling condition is known as a listing, and the criteria for each listing are enumerated in the Listing of Impairments. Each listing includes an introductory statement that describes the disorder followed by a set of medical findings in paragraph A and a set of impairment-related functional limitations in paragraph B. An individual meets the criteria of the listing when the criteria of both paragraphs A and B are satisfied. Listing of Impairments § 112.00(A).

Listing 112.02 describes the criteria for organic mental disorders involving abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain. To satisfy paragraph A for Listing 112.02, a claimant must show medically documented persistence of at least

3 - OPINION AND ORDER

one of a number of findings. Mr. Kos contends the evidence shows four of the necessary findings: memory impairment; disturbance in personality; disturbance in mood; and disturbance of concentration, attention, or judgment. The ALJ found that Mr. Kos's medically determinable impairments included ADHD and an affective disorder. These findings establish a persistent disturbance of attention and a persistent disturbance in mood. Accordingly, Mr. Kos met the A criteria for Listing 112.02.

Listing 112.04 describes the criteria for mood disorders. To satisfy paragraph A for Listing 112.04, a claimant must show a major depressive syndrome, a manic syndrome, or a bipolar syndrome, plus several specific findings that must be associated with the particular syndrome shown. Mr. Kos argues he satisfies paragraph A because the evidence shows three of the specific findings associated with manic syndromes. This argument fails because Mr. Kos did not allege, and there is no evidence that he has experienced, a manic syndrome. Mr. Kos alleged depression and all the evidence of mood disturbance supports depressive symptoms. Accordingly, Mr. Kos's reliance on findings associated with a manic syndrome is misplaced. Mr. Kos did not argue that he has the required findings associated with depressive syndromes. Accordingly, Mr. Kos did not satisfy the criteria for paragraph A of Listing 112.04.

To satisfy paragraph B of Listing 112.02, a claimant must show marked impairment in two of four specified categories of function. Mr. Kos contends the evidence establishes marked impairment in three of the four categories: age-appropriate cognitive or communicative function; age-appropriate social function; and maintaining concentration, persistence, or pace. The paragraph B criteria of Listing 112.04, for claimants between the ages of 3 and 18 are identical to those for Listing 112.02.

In February 2001, when Mr. Kos was 8 years old and in the third grade, Jim Johnson, Ph.D., performed a psychological consultation to evaluate problems he was experiencing with school performance and social interactions. Dr. Johnson found that Mr. Kos was profoundly impaired in both immediate and delayed recall due to problems with central auditory processing. Mr. Kos showed substantial difficulty hearing, understanding, and remembering what he heard, but had no such difficulty processing and remembering visual and spatial information. Admin. R. 262. Testing showed Mr. Kos had difficulty with social cues and boundaries, controlling anger, and in social relationships. *Id.* at 263-64.

In July 2001, Denise Kossover-Wechter, M.A., tested Mr. Kos for auditory processing disorders. Mr. Kos scored in the age-equivalent range of younger than four years to seven years on a test of auditory processing skills. He scored three standard deviations below the mean on a test of binaural integration which simulates the ability to distinguish the primary message from competing background noise or to receive unfamiliar instructions in less than optimal listening conditions. Overall the testing showed Mr. Kos had poor auditory memory and difficulties decoding verbal information. *Id.* at 267-73.

In July 2006, Dr. Johnson reevaluated Mr. Kos in the 8th grade. Test scores indicated Mr. Kos was very slow at processing new information and had a lot of difficulty understanding what he was being told. His problems understanding language led to inattention, frustration, and behavior that was oppositional and explosive. *Id.* at 280.

In December 2006, Dorothy Anderson, Ph.D., reviewed all the evidence in the case record and concluded it showed that Mr. Kos had marked impairment in interacting and relating with others.

Admin. R. 333, 336, 341. She opined that he had less than marked impairment in all other categories of function and did not satisfy the listings. *Id.* at 331.

In January 2008, when Mr. Kos was almost 16, Holly Crossen, Psy.D., performed a psychological evaluation on a referral from the juvenile court system. Testing showed Mr. Kos had a relative strength in interpreting and organizing visual information. He was weak in verbal knowledge, the ability to apply verbal skills to new situations, and the ability to process verbally perceived information. Dr. Crossen found Mr. Kos's weakness in expressing himself and understanding others placed him at the communication level of a child between the ages of 2 and 6, instead of his chronological age of 16. In communication and adaptive behavior, Mr. Kos scored in the lowest one percent and in socialization, he scored in the lowest two percent. Admin. R. 362.

When standardized tests are used as the measure of functional parameters, a valid score that is two standard deviations below the mean for the test is considered a marked restriction under the regulations. 20 C.F.R. § 416.926a(e); Listing of Impairments § 112.00(C). Dr. Crossen did not convert Mr. Kos's low percentile scores in communication, adaptive behavior, or socialization into standard deviations below the mean for those tests, but her report suggests they approached the two standard deviation level. She found his overall adaptive functioning score, which was higher numerically than his scores in communication, adaptive behavior, and socialization, was between one and two standard deviations below the mean. Admin. R. 362-63.

Mr. Kos contends Dr. Anderson's findings satisfy one of the two areas of marked impairment required for paragraph B, because Dr. Anderson found he had marked impairment in social functioning. The ALJ discounted Dr. Anderson's finding of marked impairment on the basis that it was inconsistent with the objective medical evidence. *Id.* at 22. The ALJ did not identify specific

6 - OPINION AND ORDER

conflicting objective medical evidence, however.  The testing administered by Dr. Crossen placed Mr. Kos in the first to second percentile in communication, adaptive behavior, and socialization. *Id.* at 362.  The third-grade testing by Dr. Johnson showed Mr. Kos had difficulty with social cues and boundaries, controlling anger, and in social relationships. *Id.* at 263-64.  Eighth grade testing by Dr. Johnson did not include direct measures of social functioning, but he diagnosed a receptive communication disorder which had a negative impact on Mr. Kos's social judgment. *Id.* at 277, 279.  None of these objective findings are inconsistent with Dr. Anderson's conclusion.  Neither the ALJ's decision nor the Commissioner's brief identified specific medical evidence that refutes Dr. Anderson's conclusion.  Accordingly, the ALJ's reason for discounting Dr. Anderson's findings is not supported by substantial evidence and cannot be upheld.

      Mr. Kos argues that Dr. Crossen's findings establish marked impairment in age appropriate communication function.  Her findings support very severe functional limitations in communication, adaptive behavior, and socialization, including test scores that appear to approach the regulatory standard for marked impairment.  There is no express finding that the test scores she obtained were two standard deviations below the mean for the tests, however.  Presumably, this question could have been resolved through the testimony of the medical expert.  Neither the ALJ nor Mr. Kos inquired of the medical expert whether the test scores were two standard deviations below the mean or otherwise supported a marked level of impairment in age-appropriate communication.  The court is not equipped or authorized to make such a medical judgment independently.  Because paragraph B requires marked impairment in two categories, and Mr. Kos has only established marked impairment in social functioning, Mr. Kos failed to prove he met the B criteria for Listing 112.02.

**III.     Medical Equivalence**

If the criteria for a listing are not met, a claimant can show medical equivalence with the listing by establishing medical findings related to his impairment that are at least of equal medical significance to those of the listed impairment. 20 C.F.R. § 416.926(a). Mr. Kos argued in his post-hearing brief that his combined impairments were medically equivalent to Listings 112.02 and 112.04.

In his decision, the ALJ made the following finding and explanation as to medical equivalence:

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> At the hearing, the medical expert Dr. Grossman testified that the claimant's impairments did not meet or equal any of the listings.

Admin. R. 20.

The Commissioner must base the determination of medical equivalence on medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 514; 20 C.F.R. § 416.926(b). In determining whether a claimant's impairment is medically equal to a listing, an ALJ must explain adequately his evaluation of the evidence and the combined effects of impairments. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). A boilerplate finding is not sufficient to support a conclusion that the claimant's impairments are not equivalent to a listing. *Lewis*, 236 F.3d at 513.

Here the ALJ did not refer to the specific listings he considered or offer any explanation why Mr. Kos's theory of medical equivalence with Listings 112.02 and 112.04 failed. An adequate explanation would require a comparison of the medical findings needed to meet the criteria of

8 - OPINION AND ORDER

particular listings with the findings in the medical evidence. *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995); 20 C.F.R. § 416.929(d)(3). The conclusory statement that Mr. Kos did not equal any listing provided insufficient explanation to show that the ALJ actually considered medical equivalence. *Marcia*, 900 F.2d at 176.

The ALJ's reliance on the medical expert is not sufficient in this case. Perry Grossman, M.D., provided medical expert testimony at the administrative hearing. His testimony focused on the question of functional equivalence, as discussed more fully below, and did not address whether Mr. Kos's impairments were medically equal to any particular listing. Admin. R. 52. For example, Dr. Grossman did not address whether the evaluation by Dr. Crossen showed marked impairment in age appropriate communication function. If anything, Dr. Grossman's testimony supports the conclusion that the ALJ neglected to consider medical equivalence.

Although Mr. Kos presented his theory that the evidence showed medical equivalence with Listings 112.02 and 112.04 after the hearing, it was well before the ALJ issued his decision and should have been addressed. The ALJ offered only a conclusory, boilerplate finding and his determination on the issue of medical equivalence cannot be upheld.

### III.    Functional Equivalence

Even if the claimant's impairment does not meet or medically equal a listing, the claimant may be disabled if his impairments result in limitations that are functionally equivalent to the listings. 20 C.F.R. § 416.926a. Functional equivalence is not based on the criteria of a specific listing. Instead, it is measured by assessing the claimant's ability to function in six domains, which represent broad areas of functioning and are intended to encompass everything that a child can and cannot do: acquiring and using information; attending and completing tasks; interacting and relating

with others; moving about and manipulating objects; caring for self; and health and physical well-being.. 20 C.F.R. § 416.926a(b)(1). If the evidence shows marked limitation in two of the domains, the claimant's impairment is functionally equivalent to the listings. 20 C.F.R. § 416.926a(a); SSR 09-1p, 2009 WL 396031 *1. The ALJ found Mr. Kos had no limitation in three of the six domains and less than marked limitation in the remaining three, including the domains of acquiring and using information and interacting and relating with others. Admin. R. 23, 26. Mr. Kos challenges the findings with respect to those two domains.

A marked limitation is such as to interfere seriously with the ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § 416.926a(e)(2). As indicated previously, a valid standardized test score that is two standard deviations below the mean for the test will be considered a marked restriction. *Id.*; Listing of Impairments § 112.00(C). Unlike the determination of whether a claimant meets or medically equals a particular listing, which is determined based on medical evidence, the determination of functional equivalence must be based on all the information in the case record about how the claimant's functioning in all activities is affected by his impairments. 20 C.F.R. § 416.926a(e); SSR 09-1p, 2009 WL 396031 *1.

### A.   Acquiring and Using Information

The ALJ found Mr. Kos had less than marked impairment in this domain. He relied on Dr. Johnson's evaluation of Mr. Kos during the 1st grade. Admin. R. 23-24. Mr. Kos scored in the average range on a test of general overall adaptive functioning. *Id.* at 260. Achievement tests demonstrated Mr. Kos was functioning at grade level in most areas. *Id.* at 261. The ALJ did not mention other findings in Dr. Johnson's report or explain why they were not significant measures of Mr. Kos's functioning in this domain. For example, Dr. Johnson found Mr. Kos was very weak

in the ability to process new information and profoundly impaired in verbal learning. Mr. Kos had difficulty accumulating details, developing an understanding of a task, and using language to drive a task. He was profoundly impaired in recall of verbal information and had great difficulty placing details he heard into memory. The testing predicted substantial difficulty remembering heard information. Mr. Kos's language based learning was extraordinarily fragile and his memory for verbal information was in the 1st percentile. *Id.* at 262, 264.

The ALJ did not discuss the contemporaneous findings of Ms. Kossover-Wechter, which suggested Mr. Kos had auditory memory impairment with decoding and prosodic difficulties with language. She expected Mr. Kos to have difficulty discriminating speech at noise levels that are typical for the classroom and difficulty remembering information he heard. *Id.* at 269-70.

The ALJ relied on Dr. Johnson's reevaluation of Mr. Kos after the 8th grade. The ALJ found it significant that testing showed Mr. Kos was moderately impaired in recall, an improvement over the profound impairment found during the 1st grade. *Id.* at 24. The ALJ did not mention Dr. Johnson's finding that Mr. Kos continued to have difficulty with receptive speech reflected in his inability to sort complex language, accumulate language based details, and process new information at a normal pace. *Id.* at 277. Dr. Johnson concluded that Mr. Kos was very slow at processing new information, struggled in all aspects of learning, and had a lot of difficulty understanding what he was being told. He required tasks that were simple, structured, organized, and paced. *Id.* at 280.

The ALJ relied on a function worksheet completed by Mr. Kos's mother in August 2006, which indicated Mr. Kos was able to read and understand sentences in comics and cartoons, read and understand stories in books, magazines, or newspapers, tell time, and understand, remember, and

carry out instructions if they were simple and broken down into small amounts of information. *Id.* at 24, 166.

The ALJ relied on a teacher questionnaire completed by a special education teacher in September 2006, when Mr. Kos was in the 9th grade. The ALJ found the teacher rated most of Mr. Kos's problems in acquiring and using information as slight problems. *Id.* at 24. This is not supported by the record. The teacher rated four areas of function slightly impaired, but found Mr. Kos had serious or very serious problems with comprehending oral instructions, understanding vocabulary, understanding and participating in discussions, providing organized oral explanations and adequate descriptions, and expressing ideas in written form. *Id.* at 212. Mr. Kos was reading and doing mathematics at 6th grade level, and spelling at 7th grade level. *Id.* at 211.

The ALJ correctly noted that Dr. Anderson opined that Mr. Kos had less than marked impairment in acquiring and using information. *Id.* at 24. Dr. Anderson reviewed the case record in December 2006, and found it supported serious problems with oral and written expression, understanding instructions and vocabulary and related problems. She did not believe it supported marked impairment, but her worksheet does not explain why. *Id.* at 333, 336. Notably, her review and opinion predated Dr. Crossen's evaluation in January 2008.

The ALJ relied on Dr. Crossen's evaluation, but mentioned only that Mr. Kos exhibited strength in using visual information. *Id.* at 24. As described previously, Dr. Crossen found Mr. Kos was weak in verbal knowledge, applying verbal skills to new situations, processing verbally perceived information, expressing himself, and understanding others. Dr. Crossen placed Mr. Kos at the communication level of a two- to six-year-old, instead of his chronological age of 16. In communication and adaptive behavior, Mr. Kos was in the 1st percentile. *Id.* at 362. The ALJ

neglected to explain why these portions of Dr. Crossen's report were not significant in assessing Mr. Kos's functioning in this domain.

The ALJ's decision does not provide sufficient explanation to show that he considered all the evidence of impairment in this domain. Accordingly, the court is unable to determine that his conclusion is supported by substantial evidence.

### B.    Interacting and Relating with Others

The ALJ found Mr. Kos had less than marked impairment in this domain. The ALJ relied on Dr. Johnson's report from his 1st grade evaluation in 2001. At that time, Mr. Kos's subjective reports indicated he did not see himself as having significant problems with interpersonal relationships, although he did not get along with a little girl in his class. *Id.* at 260, 263. Mr. Kos's mother told Dr. Johnson that he was about average in social functioning, but also noted he was aggressive, hyperactive, inattentive, and had significant difficulty being compliant. *Id.* at 262-63. The ALJ did not mention that Dr. Johnson found Mr. Kos had weakness in social interaction due to difficulty processing formal and informal social information typical of kids who miss social cues. *Id.* at 260.

At his reevaluation after the 8th grade in 2006, Dr. Johnson said Mr. Kos's social skills appeared to be adequate during his interview, but that social judgment was likely to be affected by his rapidly cycling mood and his impulsiveness. *Id.* at 275. In school, Mr. Kos was exhibiting angry outbursts and he would become irrational when upset. Occasionally, his mother had to remove him from school during such episodes. *Id.* at 276. Mr. Kos's social judgment was limited by his difficulty with receptive speech and his inability to sort complex language. *Id.* at 277.

In August 2006, Mr. Kos's mother reported that he did not get along with her or other adults, but had friends and seemed to get along with his siblings and teachers. *Id.* at 167. The ALJ considered the teacher questionnaire completed by a special education teacher in September 2006, when Mr. Kos was in the 9th grade. The ALJ said the teacher rated most of Mr. Kos's problems in interacting and relating with others as only slight problems. *Id.* at 27. This interpretation of the questionnaire cannot be upheld. The teacher indicated that Kos had daily obvious and serious problems playing cooperatively with other children, seeking attention appropriately, expressing anger appropriately, following rules for classes or games, interpreting social cues such as facial expressions, body language, hints, or sarcasm, and using adequate vocabulary to express himself in general, everyday conversation. Mr. Kos required behavior modification strategies including placement in alternative schools, behavior coaching, social skills class, and speech and language services with objectives of increasing his ability to seek attention appropriately, to interpret social cues, and to express himself in conversation. *Id.* at 214. The ALJ failed to account for these daily limitations when he found the questionnaire supported only slight problems.

Matthew Pearl, L.C.S.W., saw Mr. Kos in weekly counseling session beginning in February 2007. In April 2007, Pearl wrote to Mr. Kos's primary care provider, to recommend intervention by a child psychiatrist. Mr. Kos had been transferred to a new school placement due to behavioral problems, but continued to have behavioral problems at home and at school. Mr. Kos's anger was easily triggered by peers. Pearl predicted that without intensive psychiatric intervention, Mr. Kos's behavior would lead to increased risk and contact with the juvenile justice system. *Id.* at 369. The ALJ conceded that Pearl indicated Mr. Kos was having behavior problems, but did not explain why these supported a less than marked level of impairment. *Id.* at 27.

In July 2007, Pearl completed a mental impairment questionnaire indicating Mr. Kos had marked difficulties maintaining social functioning. *Id.* at 354. He said Mr. Kos had shown an inability to function outside a highly supportive school situation. *Id.* at 355. He assessed Mr. Kos's global functioning over the preceding year at 42. *Id.* at 348. In December 2009, Pearl completed another questionnaire indicating a similar functional level with additional symptoms of anti-social behavior such as involvement in gang culture and juvenile delinquency including charges for criminal mischief and burglary. *Id.* at 382. The ALJ did not discuss this evidence specifically.

In January 2008, Dr. Crossen diagnosed Mr. Kos with a conduct disorder manifested by physical cruelty to others, deliberate destruction of property belonging to others, breaking into a house, shoplifting, noncompliance with parental restrictions, running away from home, and truancy. *Id.* at 364-65. The ALJ did not discuss the impact of this evidence on his determination that Mr. Kos had less than marked impairment in interacting and relating with others.

The ALJ relied on Mr. Kos's hearing testimony to the effect that his ability to get along with other students had gotten better by the time he left school. *Id.* at 27. Mr. Kos also testified that he had anger and frustration problems in the 8th grade and frequently was kicked out of class. *Id.* at 41. He got into fights with other students and had trouble keeping friendships. *Id.* at 43. He attended special schools after the 6th grade, and in 10th grade was transferred to a lockdown school for students with behavior problems such as fighting with other students and teachers. *Id.* at 46-47. The ALJ did not explain how this testimony was weighed in his determination that Mr. Kos did not have marked impairment in interacting and relating with others.

As with his evaluation of the domain for acquiring and using information, the ALJ's decision does not provide sufficient explanation to show that he considered all the relevant evidence of

15 - OPINION AND ORDER

impairment in the domain for interacting and relating with others. Accordingly, the court is unable to determine that the ALJ's conclusion is supported by substantial evidence.

## IV.    Evaluation of Pertinent Evidence

Mr. Kos contends the ALJ's failed to properly assess his functional limitations because he disregarded evidence and improperly discounted Mr. Kos's subjective statements, the statements of Mr. Kos's mother, and the findings of Matthew Pearl, regarding the limiting effects of his impairments.

### A.    Credibility Determination

In deciding whether to accept subjective statements, an ALJ must perform two stages of analysis. The first stage is a threshold test in which the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986). If the claimant surmounts this threshold, the ALJ must proceed to the second stage, where the ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1283. It is not sufficient for the ALJ to make a general assertion that a claimant is not credible. The ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 917-18 (9th Cir. 1993); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The findings must be sufficiently specific to permit the court to conclude that the ALJ did not discredit the claimant arbitrarily. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

Here the ALJ found that Mr. Kos's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms;

> however, the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent they are inconsistent with the finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below.

Admin. R. 21.

Unfortunately, the ALJ did not identify which of Mr. Kos's statements were not credible and the purported explanation of reasons amounted to no more than a recitation of evidence supporting the ALJ's decision which did not account for pertinent evidence supporting Mr. Kos's claim, as described in earlier sections of this opinion. The ALJ's decision does not meet the clear and convincing standard of explanation and his findings are not sufficiently specific to persuade the court that he did not arbitrarily discredit Mr. Kos's testimony. The credibility determination cannot be sustained.

### B. Lay Witness Statements

In considering whether a child claimant has marked limitations with respect to the six domains concerning functional equivalence under 20 C.F.R. § 416.926a, the Commissioner is required to consider all relevant information in the record, including, among other things, information concerning the child's level of functioning from his parents, teachers, and other people who know him. 20 C.F.R. §§ 416.924a(a)(2), 416.926a(e)(1). Accordingly, an ALJ must consider the statements of non-medical sources who are in a position to observe a claimant's symptoms and daily activities. *Bruce v. Astrue,* 557 F.3d 1113, 1116 (9th Cir. 2009); *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Such lay witnesses are competent to testify regarding

17 - OPINION AND ORDER

the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Lay testimony as to the claimant's symptoms or how an impairment affects the claimant's activities cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*; *Bayliss v. Barnhart*, 427 F.2d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In January 2010, Mr. Kos's mother provided a recorded statement after she was denied the opportunity to testify at Mr. Kos's administrative hearing. She said that Mr. Kos cannot stay on task and has angry, violent outbursts on a daily basis. Admin. R. 241. She said his auditory processing disorder prevents him from understanding what he is told and causes him to become frustrated and can lead to oppositional behavior, including physical fights. *Id.* at 242. She said Mr. Kos could concentrate for about two hours if he had personal support and encouragement, but for only about 15 minutes on his own. *Id.* at 243. She described his troubled educational history of being removed from and transferred to alternative schools for behavioral and academic problems. *Id.* at 245-46. She did not think Mr. Kos could be employed because of anger and frustration stemming from his auditory processing problems and inability to understand tasks and changes in work routine. *Id.* at 248. The ALJ impermissibly disregarded Ms. Kos's testimony without comment. *Nguyen*, 100 F.3d at 1467.

Social Worker Pearl had a treating relationship with Mr. Kos based on weekly counseling sessions beginning in early 2007. Admin. R. 370-79. Pearl wrote the letter and two questionnaires described previously, indicating Mr. Kos functioned globally at a low level, had marked impairment

in social functioning, and had a poor prognosis due to life stressors and lack of support in the home. The ALJ explicitly addressed only Pearl's opinion regarding Mr. Kos's prognosis. *Id.* at 22.

The regulations treat social workers as "other sources." 20 C.F.R. § 416.913(a), (d). The statements of "other sources" are evaluated as lay witness statements. *Turner v. Comm'r of Soc. Sec.*, 613 F3d 1217, 1223-24 (9th Cir 2010). Accordingly, to properly discount Pearl's opinion, the ALJ was required to give reasons supported by substantial evidence and germane to the witness. *Id.*; *Lewis v. Apfel,* 236 F.3d at 511. The ALJ discounted Pearl's opinion because it was not supported by the objective evidence in the record, it was inconsistent with the opinion of Dr. Grossman, and because Pearl is not an acceptable medical source under the regulations.

The ALJ's reasoning is insufficient to discredit Pearl's opinion. The conclusion that Pearl's opinion is unsupported by medical evidence is not entirely accurate. There is psychological testing and clinical evidence supporting his conclusion that Mr. Kos has marked limitations in social functioning, for example. Dr. Anderson reviewed the case record and reached the same conclusion. Admin. R. 333, 336, 341. The lack of medical support is not a proper basis for discrediting a lay witness, in any event. *Bruce*, 557 F.3d at 1116. Pearl's opinion was supported by his own clinical findings based on weekly counseling sessions over an extended period of time. This relationship placed Pearl in a position to observe Mr. Kos's symptoms, interactions with others, and daily activities. Such observations, instead of objective medical evidence, are the basis of lay witness statements. Lay witness statements do not require objective medical support because they are not medical opinions.

Dr. Grossman reviewed the record and found that Mr. Kos had difficulty interacting and relating to his mother, but got along well with others. On that basis, he concluded Mr. Kos had less

than marked limitations in the domain for interacting and relating to others. Admin. R. 52-53. Dr. Grossman did not discuss Pearl's treatment records or opinion. He indicated that Mr. Kos's interactions with the juvenile justice system and resulting referrals for mental health treatment were beyond the scope of his medical review. *Id.* at 53-54. He suggested Mr. Kos's anti-social behavior resulted from drug and alcohol problems, a proposition that is not supported in the record. Admin. R. 54-55. Because Dr. Grossman's testimony does not appear to account for all the evidence in the case, I am persuaded that the ALJ relied too heavily on his opinion to discredit Pearl's findings.

## **CONCLUSION**

Based on the foregoing, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this opinion. The ALJ must reevaluate the questions of medical and functional equivalence and explain his evidentiary findings with legally sufficient reasons. The Commissioner may adduce any additional evidence he deems necessary to accurately assess Mr. Kos's limitations and resolve the outstanding issues.

The Clerk is directed to grant judgment for Mr. Kos pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this __27th__ day of September, 2011.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge